```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION


KERRI-ANN SANDERSON, as Personal
Representative of the Estate of
Andre Sanderson and on behalf of
AKS, minor, and OSWALD SANDERSON,
and PAULETTE SANDERSON, parents of
the decedent,

                         Plaintiffs,


vs.                                    Case No.  2:07-cv-828-FtM-29DNF


SPX COOLING TECHNOLOGIES, INC. f/k/a
MARLEY COOLING TECHNOLOGIES, INC.
f/k/a CERAMIC COOLING TOWER
CORPORATION, a foreign corporation;
BLACK & VEATCH CORPORATION, a
foreign corporation; CERAMIC COOLING
TOWER CORPORATION, a foreign
corporation; MARLEY COOLING
TECHNOLOGIES f/k/a CERAMIC COOLING
TOWER CORPORATION, a foreign
corporation; BBCT CORPORATION f/k/a
CERAMIC COOLING TOWER CORPORATION, a
foreign corporation; ENDURO, INC., a
foreign corporation; ENDURO SYSTEMS,
INC. a/k/a ENDURO COMPOSITES, a
foreign corporation; ENDURO
COMPOSITES, a foreign corporation;
BDT ENGINEERING CORPORATION, a
foreign corporation; BALCKE DURR,
INC., a foreign corporation; BBF,
INC. f/k/a BALCKE DURR, INC., a
foreign corporation; BB CONS, INC.
f/k/a BALCKE DURR, INC., a foreign
corporation; and BABCOCK POWER, INC.
f/k/a BABCOCK BURSIG AG f/k/a BALCKE
DURR, INC., a foreign corporation,

                         Defendants.
_____
```

SPX COOLING TECHNOLOGIES, INC.,

 Crossclaim-Plaintiff,

v.

CERAMIC COOLING TOWER CORPORATION, BALCKE DURR, INC., BBF, INC. f/k/a BALCKE DURR, INC., BB CONS, INC., f/k/a BALCKE DURR, INC., BABCOCK POWER, INC., f/k/a BABCOCK BORSIG AG,

 Crossclaim-Defendants,

_____

ENDURO SYSTEMS, INC.,

 Crossclaim-Plaintiff,

v.

BALCKE DURR, INC., SPX COOLING TECHNOLOGIES, INC., and BLACK & VEATCH CORPORATION,

 Crossclaim-Defendants.

_____

SPX COOLING TECHNOLOGIES, INC., a foreign corporation, f/k/a MARLEY COOLING TECHNOLOGIES, INC.,

 Third-party Plaintiff,

v.

BDCP HOLDING CORPORATION, a foreign corporation, BALCKE DURR CONSOLIDATED, INC. n/k/a BB CONS, INC., a foreign corporation, and BD AIR FIN, INC. n/k/a AIR FIN, INC., a dissolved foreign corporation,

 Third-party Defendant.

_____

**OPINION AND ORDER**

This matter comes before the Court on cross-claim defendants BBF, Inc. f/k/a Balcke Durr, Inc, BBCT Corporation f/k/a Ceramic Cooling Tower Corporation, BB Cons, Inc. f/k/a Balcke Durr Construction's (collectively the Cross-Claim Defendants) Motion to Dismiss (Doc. #87) filed on May 27, 2008. Cross-claim plaintiff SPX Cooling Technologies, Inc. (SPX Cooling) filed a Memorandum Opposing the Motion to Dismiss (Doc. #88) on June 6, 2008.

Also before the Court is BDCP Holding Corporation's Motion to Stay Proceedings and Compel Arbitration as to the Second Amended Third Party Complaint of SPX Technologies, Inc., or in the Alternative, Motion to Dismiss (Doc. #127) filed on October 21, 2008. SPX Cooling filed a Memorandum in Opposition (Doc. #130) on November 21, 2008, and BDCP Holding Corporation (BDCP Holding) filed a Reply (Doc. #136) on January 9, 2009.

**I.**

This action is before the Court on plaintiffs' First Amended Complaint (Doc. #27), an eighty-page, twenty-seven count complaint which relates to the death of Andre Sanderson. The First Amended Complaint alleges that on February 14, 2006, Mr. Sanderson, in furtherance of his employment at the Florida Power & Light facility in Fort Myers, Florida, climbed a stair tower utilized for access to an adjoining cooling tower. On the way down, Mr. Sanderson and a co-worker stepped from the top platform onto the top set of

stairs, and the four brackets connecting the top set of stairs then gave way and the stairs fell onto the set of stairs underneath. Both men fell to a landing approximately 20-28 feet below, and Mr. Sanderson died as a result of the fall. (Doc. #27, ¶ 89.) The First Amended Complaint sues thirteen (13) corporations which it alleges were involved in the design, manufacture, construction, assembly, inspection and/or sale of the stair tower. As it relates to SPX Cooling, the First Amended Complaint sets forth claims of negligence (Count I), breach of express warranty (Count II), and products liability (Count III).

**II.**

In due course, SPX Cooling filed a Cross-Claim (Doc. #35, pp. 46-49) against the five corporate Cross-Claim Defendants. This Cross-Claim alleges that, pursuant to a July 30, 2002 Acquisition Agreement between BDCP Holding Corporation and SPX Corporation, the Cross-Claim Defendants retained liability for all personal and bodily injury and product liability claims relating to the products and services provided prior to the date of the agreement, and had agreed to defend and indemnify SPX Cooling for any such claims. The Cross-Claim alleges, on information and belief, that in July 2001 the Cross-Claim Defendants designed, manufactured, assembled and/or placed into service the stair tower alleged by plaintiffs to have caused the wrongful death of Mr. Sanderson. The Cross-Claim further asserts that the Cross-Claim Defendants breached the Acquisition Agreement by refusing to defend and indemnify SPX

Cooling against plaintiffs' claims in the wrongful death litigation.

**A.**

The Cross-Claim Defendants seek to dismiss the Cross-Claim because none of them is a party to the Acquisition Agreement. Rather, the Cross-Claim Defendants assert that the Acquisition Agreement was between SPX Corporation and BDCP Holding Corporation. Alternatively, if the contractual indemnity claim can be asserted, the Cross-Claim Defendants seek dismissal or a stay pursuant to the arbitration provision of the Acquisition Agreement.

**B.**

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. Erickson v. Pardus, 127 S. Ct. 2197 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002). The Court, however, may consider documents which are central to plaintiff's claim whose authenticity is not challenged, whether the document is physically attached to the complaint or not, without converting the motion into one for summary judgment. Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005); Maxcess, Inc. v. Lucent Techs., Inc., 433 F.3d 1337, 1340 n.3 (11th Cir. 2005). If such a document contradicts the general and conclusory allegations in the complaint, the document governs. Crenshaw v.

Lister, No. 08-14289, ___ F.3d ___, 2009 WL 279812 (11th Cir. Feb. 6, 2009).

## C.

BDCP Holding Corporation served as a holding company for a number of companies, including the Cross-Claim Defendants, each of which was a wholly-owned subsidiary of BDCP Holding Corporation. On or about July 30, 2002, BDCP Holding Corporation sold all common stock of certain of its wholly-owned subsidiaries and selected assets of other wholly-owned subsidiaries for $55 million to SPX Corporation pursuant to a lengthy Acquisition Agreement (Doc. #35-2).

The Acquisition Agreement provides that "[t]he Seller" shall indemnify and hold harmless the Purchaser and Purchaser's Affiliates from certain claims. (Doc. #35-2, § 11.1(a).) "Seller" and "Purchaser" are defined terms under the Acquisition Agreement. (Id. at Article 13, p. 74.) The Introduction of the Acquisition Agreement defines the "Seller" as "BDCP Holding Corporation, a Delaware corporation" and defines "Purchaser" as "SPX Corporation, a Delaware Corporation" (Doc. #35-2, p. 6.) While none of the Cross-Claim Defendants are identified as the "Seller," SPX Cooling argues that each is included within the term "Seller" because each is identified in the Preamble to the Acquisition Agreement as one of the Subsidiaries of BDCP Holding Corporation. The Court disagrees.

The Preamble to the Acquisition Agreement identifies the Subsidiaries of BDCP Holding Corporation and then delimits which Subsidiaries and assets are being sold to SPX Corporation. To this end, section 1 of the Preamble: (a) identifies in Exhibit P1[1] the 27 companies in which BDCP Holding Corporation holds participations and the percentage of those participations; (b) states that the Subsidiaries collectively own and operate the Cooling Group Business and the API Business; (c) identifies how each Subsidiary is referred to in the Acquisition Agreement; and (d) identifies the Selling Subsidiaries in Exhibit P2 as holding assets of the Cooling Group Business, the API Business, and the service business conducted by DB Thermal (PTY) Ltd. Section 2 of the Preamble then states what the Seller wishes to sell and what the Purchaser wishes to acquire: i.e., certain Subsidiaries listed in Exhibit P3 (the "Sold Subsidiaries") and certain assets of the "Selling Subsidiaries," collectively referred to as the "Sold Business." The pertinent paragraph states:

> The Seller wishes to sell to Purchaser: (A) certain subsidiaries related to the Cooling Group Business and the API Business, by sale of the shares of the Subsidiaries set out in Exhibit P3 (the "Sold Subsidiaries"), (B) all of the assets of the Selling Subsidiaries (other than the Retained Assets) by causing the Selling Subsidiaries to convey such assets to Purchaser as described herein (such assets, together with the Sold Subsidiaries, are collectively referred to herein as the "Sold Business").

---

[1]Exhibit P1 includes all Cross-Claim Defendants. (Doc. #35-2, pp. 84-85.)

(Doc. #35-2, p. 6.)  The Acquisition Agreement further provides that "the Seller sells by causing the Selling Subsidiaries to transfer to the Purchaser, and the Purchaser purchases from the Seller, all of their respective assets . . ." excluding retained assets and part of a corporate name.  (Doc. #35-2, Article 1.1(b).)

The Court finds that the Acquisition Agreement is unambiguous, and that nothing in the Preamble or the remainder of the Acquisition Agreement causes any Selling Subsidiary to fall within the meaning of "Seller" as used in the Acquisition Agreement.  The Preamble simply clarifies what subsidiaries and assets are being sold by BDCP Holding Corporation and how the sale is to be accomplished; it does not make the wholly-owned Selling Subsidiaries the Seller.  The Selling Subsidiaries and their assets constituted the "what" that was being sold, not the "who" that was doing the selling.  Therefore, the motion to dismiss will be granted.

**III.**

SPX Cooling also filed a Second Amended Third Party Complaint (Doc. #108) alleging that BDCP Holding Corporation, Balcke Durr Consolidated, Inc. n/k/a BB Cons, Inc., BD Air Fin, Inc. n/k/a Air Fin, Inc., and Babcock Borsig AG (the Third Party Defendants) agreed, pursuant to the same Acquisition Agreement, to defend and indemnify SPX Cooling for any claims of personal or bodily injury or product liability relating to any products and services manufactured, sold, distributed, or installed by the Third Party

Defendants prior to July 30, 2002. SPX Cooling alleges that in July 2001 the Third Party Defendants designed, manufactured, assembled and/or placed into service the stair tower alleged by plaintiffs to have caused the wrongful death of Mr. Sanderson. SPX Cooling seeks damages under the Acquisition Agreement for breach of the duties to indemnify (Count I), to defend (Count II), and to guarantee an obligation (Count III). SPX Cooling also seeks contribution (Count VI [sic]) if it is held liable to plaintiffs.

BDCP Holding Corporation (BDCP) acknowledges the indemnity provision in its Acquisition Agreement with SPX Corporation, but argues that it does not apply to the claims made by SPX Cooling in response to the causes of actions by plaintiffs in this case. Because the Acquisition Agreement contains an arbitration provision, BDCP argues that the determination as to whether a particular claim is subject to arbitration must be made by the arbitrators, not the court. Alternatively, if the Court were to decide this threshold issue, BDCP argues that all causes of action by SPX Cooling arise out of (or as to Count Four, "touches" upon matters covered by) the Acquisition Agreement and therefore are within the scope of the arbitration provision. SPX Cooling counters that the Acquisition Agreement cannot be read so broadly, but must be limited to matters relating to the interpretation or performance of the Acquisition Agreement.

The Court concludes that the issue of whether a particular dispute is within the scope of the parties' agreement to arbitrate

is a matter of contract interpretation to be decided by the court. Hemispherx Biopharma, Inc. v. Johannesburg Consol. Investments, 553 F.3d 1351 (11th Cir. 2008); Int'l Underwriters AG & Liberty Re-Insurance Corp., S.A. v. Triple I: Int'l Invs., Inc., 533 F.3d 1342, 1344 (11th Cir. 2008); Telecom Italia, SPA v. Wholesale Telecom Corp., 248 F.3d 1109, 1114 (11th Cir. 2001)); Becker v. Davis, 491 F.3d 1292, 1298 (11th Cir. 2007).

The relevant portions of the Acquisition Agreement as it relates to arbitration provide:

> [I]n the event that a controversy or dispute (a "Dispute") arises out of or results from this Agreement or any of the transactions or documents contemplated herein or therein, and such controversy or dispute (a "Transaction Dispute") cannot be settled through negotiations between the Parties, then the Parties shall be finally settled under the rules of arbitration of the International Chamber of Commerce by three arbitrators appointed in accordance with the said rules. The arbitration proceedings shall be in the English language, venue shall be Frankfurt, Germany. In addition to the rules of arbitration of the International Chamber of Commerce the laws of the Federal Republic of Germany shall apply.
>
> . . . The Parties hereto covenant and agree that the remedies and procedures set forth in this Section shall be the sole and exclusive remedies available in the event of a Transaction Dispute. Notwithstanding the foregoing, if any Party, as part of a Transaction Dispute, seeks injunctive relief or any other remedy requiring specific enforcement, then solely with respect to such equitable relief such Party shall be permitted to seek relief in any federal or state court of competent jurisdiction.

(Doc. #35-2, p. 81.) Thus, to be subject to mandatory arbitration under the Acquisition Agreement, the dispute must "arise[] out of

or result[] from" the Acquisition Agreement or any of the transactions or documents contemplated by it.

SPX Cooling argues that the "rise out of or result from" language must be interpreted narrowly, as was done in <u>Mediterranean Enters., Inc. v. Ssangyong Corp.</u>, 708 F.2d 1458 (9th Cir. 1983). In <u>Mediterranean</u>, the Ninth Circuit adopted the Second Circuit's reasoning and found that "'arising hereunder' is intended to cover a much narrower scope of disputes, i.e., only those relating to the interpretation and performance of the contract itself." <u>Id.</u> at 1464. The binding precedent in the Eleventh Circuit, however, has construed "arising out of" and "arising out of or in connection with" much more broadly and favoring arbitration. <u>Becker v. Davis</u>, 491 F.3d at 1304-05 (citing <u>Gregory v. Electro-Mechanical Corp.</u>, 83 F.3d 382, 386 (11th Cir. 1996)(rejecting Second and Ninth Circuit's narrow interpretation)); <u>Telecom Italia, SPA</u>, 248 F.3d at 1116.

The first three counts in the Second Amended Third Party Complaint clearly arise under the Acquisition Agreement. The issues presented in the causes of action are whether the Acquisition Agreement was breached by refusal to defend, indemnify or guarantee an obligation. Therefore, the Court finds that the first three counts are subject to arbitration, and the Second Amended Third Party Complaint should be stayed as to these three counts.

The claim for contribution is distinct from any obligation under the Acquisition Agreement, and is not subject to arbitration.

The contribution count is based upon a Florida statute, not the Acquisition Agreement. Therefore, the arbitration stay does not encompass the fourth count. Nonetheless, the arbitration proceedings will impact the contribution claim. See FLA. STAT. § 768.31(2)(f)("When one tortfeasor is entitled to indemnity from another, the right of the indemnity obligee is for indemnity and not contribution, and the indemnity obligor is not entitled to contribution from the obligee for any portion of her or his indemnity obligation.") Therefore, in the interests of judicial economy, the Court will stay the fourth count of the Second Amended Third Party Complaint pending completion of the arbitration proceedings.

Accordingly, it is now

**ORDERED**:

1. Cross-claim defendants BBF, Inc. f/k/a Balcke Durr, Inc, BBCT Corporation f/k/a Ceramic Cooling Tower Corporation, BB Cons, Inc. f/k/a Balcke Durr Construction's Motion to Dismiss (Doc. #87) is **GRANTED**, and the Cross-Claim (Doc. #35, pp. 46-49) is dismissed.

2. BDCP Holding Corporation's Motion to Stay Proceedings and Compel Arbitration as to the Second Amended Third Party Complaint of SPX Technologies, Inc., or in the Alternative, Motion to Dismiss (Doc. #127) is **GRANTED IN PART AND DENIED IN PART**. The motion is **granted** to the extent that Counts I, II, and III of the Second Amended Third Party Complaint are **stayed** pending arbitration

pursuant to under the Acquisition Agreement; Count IV is **stayed** during the pendency of the arbitration proceedings as to the first three counts.  The motion is otherwise denied.

**DONE AND ORDERED** at Fort Myers, Florida, this ___19th___ day of February, 2009.

/s/ John E. Steele
JOHN E. STEELE
United States District Judge

Copies:
Counsel of record