```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

KERRI-ANN SANDERSON, as Personal
Representative of the Estate of
Andre Sanderson and on behalf of
AKS, minor, and OSWALD SANDERSON,
and PAULETTE SANDERSON, parents of
the decedent,

                  Plaintiffs,

vs.                               Case No.  2:07-cv-828-FtM-29DNF

SPX COOLING TECHNOLOGIES, INC. f/k/a
MARLEY COOLING TECHNOLOGIES, INC.
f/k/a CERAMIC COOLING TOWER
CORPORATION, a foreign corporation;
BLACK & VEATCH CORPORATION, a
foreign corporation; CERAMIC COOLING
TOWER CORPORATION, a foreign
corporation; MARLEY COOLING
TECHNOLOGIES f/k/a CERAMIC COOLING
TOWER CORPORATION, a foreign
corporation; BBCT CORPORATION f/k/a
CERAMIC COOLING TOWER CORPORATION, a
foreign corporation; ENDURO, INC., a
foreign corporation; ENDURO SYSTEMS,
INC. a/k/a ENDURO COMPOSITES, a
foreign corporation; ENDURO
COMPOSITES, a foreign corporation;
BDT ENGINEERING CORPORATION, a
foreign corporation; BALCKE DURR,
INC., a foreign corporation; BBF,
INC. f/k/a BALCKE DURR, INC., a
foreign corporation; BB CONS, INC.
f/k/a BALCKE DURR, INC., a foreign
corporation; and BABCOCK POWER, INC.
f/k/a BABCOCK BURSIG AG f/k/a BALCKE
DURR, INC., a foreign corporation,

                  Defendants.
_____

SPX COOLING TECHNOLOGIES, INC.,

       Crossclaim-Plaintiff,
v.

CERAMIC COOLING TOWER CORPORATION,
BALCKE DURR, INC., BBF, INC. f/k/a
BALCKE DURR, INC., BB CONS, INC.,
f/k/a BALCKE DURR, INC., BABCOCK
POWER, INC., f/k/a BABCOCK BORSIG
AG,

    Crossclaim-Defendants,
_____

ENDURO SYSTEMS, INC.,

    Crossclaim-Plaintiff,
v.

BALCKE DURR, INC., SPX COOLING
TECHNOLOGIES, INC., and BLACK &
VEATCH CORPORATION,

    Crossclaim-Defendants.
_____

SPX COOLING TECHNOLOGIES, INC., a
foreign corporation, f/k/a MARLEY
COOLING TECHNOLOGIES, INC.,

    Third-party Plaintiff,
v.

BDCP HOLDING CORPORATION, a foreign
corporation, BALCKE DURR
CONSOLIDATED, INC. n/k/a BB CONS,
INC., a foreign corporation, and BD
AIR FIN, INC. n/k/a AIR FIN, INC., a
dissolved foreign corporation,

    Third-party Defendant.
_____

## **OPINION AND ORDER**

This matter comes before the Court on Third Party Defendant Babcock Borsig AG's Motion to Stay Proceedings and Compel Arbitration as to the Second Amended Third Party Complaint of SPX

Cooling Technologies, Inc., (SPX Cooling) or in the Alternative, Motion to Dismiss (Doc. #167) filed on May 18, 2009. SPX Cooling filed a Memorandum in Opposition (Doc. #176) on June 11, 2009, and Babcock Borsig AG (Babcock Borsig) filed a Reply (Doc. #183) on July 19, 2009.

**I.**

The Court previously summarized the case as follows: "The First Amended Complaint alleges that on February 14, 2006, Andre Sanderson, in furtherance of his employment at the Florida Power & Light facility in Fort Myers, Florida, climbed a stair tower utilized for access to an adjoining cooling tower. On the way down, Mr. Sanderson and a co-worker stepped from the top platform onto the top set of stairs, and the four brackets connecting the top set of stairs then gave way and the stairs fell onto the set of stairs underneath. Both men fell to a landing approximately 20-28 feet below, and Mr. Sanderson died as a result of the fall." (Doc. 147, pp. 3-4.) Sanderson's estate sued thirteen (13) corporations which it alleges were involved in the design, manufacture, construction, assembly, inspection and/or sale of the stair tower. As it relates to SPX Cooling, the First Amended Complaint sets forth claims of negligence (Count I), breach of express warranty (Count II), and products liability (Count III).

On or about July 24, 2008, SPX Cooling filed a Second Amended Third Party Complaint (Doc. #108) that alleges that BDCP Holding Corporation (BDCP), Balcke Durr Consolidated, Inc. n/k/a BB Cons,

Inc., BD Air Fin, Inc. n/k/a Air Fin, Inc., and Babcock Borsig (the Third Party Defendants) agreed, pursuant to a July 30, 2002 Acquisition Agreement, to defend and indemnify SPX Cooling for any claims of personal or bodily injury or product liability relating to any products and services manufactured, sold, distributed, or installed by the Third Party Defendants prior to July 30, 2002. SPX Cooling alleges that in July 2001, the Third Party Defendants designed, manufactured, assembled and/or placed into service the stair tower alleged by plaintiffs to have caused the wrongful death of Mr. Sanderson.  SPX Cooling seeks damages under the Acquisition Agreement for breach of duties to indemnify (Count I), to defend (Count II), and to guarantee an obligation (Count III).  SPX Cooling also seeks contribution (Count IV) if it is held liable to plaintiffs.

On February 19, 2009, as to the Second Amended Third Party Complaint of SPX Cooling, the Court held that the first three counts against one of the Third Party defendants, BDCP, clearly arose under the Acquisition Agreement and therefore are subject to its arbitration clause.  (See Doc. #147.)[1]  The issues presented in the first three counts in the Second Amended Third Party Complaint were

---

[1] The Eleventh Circuit construes the language "arising out of" and "arising out of or in connection with" broadly and favoring arbitration.  Becker v. Davis, 491 F.3d 1292, 1304-05 (11th Cir. 2007)(citing Gregory v. Electro-Mechanical Corp., 83 F.3d 382, 386 (11th Cir. 1996)(rejecting Second and Ninth Circuit's narrow interpretation)); Telecom Italia, SPA v. Wholesale Telecom Corp., 248 F.3d 1109, 1116 (11th Cir. 2001).

whether the Acquisition Agreement was breached by refusal to defend, indemnify or guarantee an obligation. After analyzing the relevant portions of the Acquisition Agreement as it related to arbitration, the Court found that to be subject to mandatory arbitration under the Acquisition Agreement, the dispute must "arise[] out of or result[] from" the Acquisition Agreement or any of the transactions or documents contemplated by it. Id. at 10-11. Therefore, the Court held that the first three counts were subject to arbitration, and the Second Amended Third Party Complaint should be stayed as to those three counts. (Doc. #147, p. 11.) The Court also held that the claim for contribution, based upon a Florida statute, was distinct from any obligation under the Acquisition Agreement, and therefore not subject to arbitration. Id. at 11-12. However, since the arbitration proceedings would impact the contribution claim, in the interests of judicial economy, the fourth count was stayed pending the completion of arbitration proceedings. Id. at 12.

**II.**

Following that Opinion and Order, Babcock Borsig filed the instant Motion to Stay Proceedings and Compel Arbitration as to the Second Amended Third Party Complaint of SPX Cooling, or in the Alternative, Motion to Dismiss. As it relates to Babcock Borsig, the Second Amended Third Party Complaint sets forth claims of breach of the duty to guarantee an obligation (Count III) and contribution (Count IV).

Babcock Borsig acknowledges that as a general rule arbitration is a matter of contract, and thus a non-party to the Acquisition Agreement usually has no standing to compel arbitration. However, Babcock Borsig argues that there is an equitable estoppel exception to the general rule that applies in this case. SPX Cooling counters that the general arbitration rule should apply: since Babcock Borsig is not a party to the Acquisition Agreement, it cannot enforce the arbitration clause. SPX Cooling, also argues, citing no authority, that if Babcock Borsig is seeking the benefits of equitable estoppel, it must first meet the elements for equitable estoppel under Florida substantive law. Finally, SPX Cooling maintains, despite the Court's previous Opinion and Order, that even if Babcock Borsig were a party to the Acquisition Agreement, the arbitration clause should not apply because the claims are external to the Acquisition Agreement.

The issue of whether a particular dispute is subject to an arbitration agreement is a matter of law to be decided by the Court. See, e.g., Hemispherx Biopharma, Inc. v. Johannesburg Consol. Investments, 553 F.3d 1351 (11th Cir. 2008); Int'l Underwriters AG & Liberty Re-Insurance Corp., S.A. v. Triple I: Int'l Invs., Inc., 533 F.3d 1342, 1344 (11th Cir. 2008). Since the Court has already ruled that Counts I-III of the Second Amended Third Party Complaint arise under the arbitration clause of the Acquisition Agreement (Doc. # 147), the only new issue raised by the instant motion is whether the causes of action against Babcock Borsig, who is not a

signatory to nor defined as a "party" in the Acquisition Agreement, should be subject to arbitration.

Generally, the federal policy favoring arbitration only applies to disputes where the parties have an agreement to arbitrate. Becker v. Davis, 491 F.3d 1292, 1298 (11th Cir. 2007). Nonetheless, there are exceptions to the general rule. Id. at 1299 (citing Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 756-57 (11th Cir. 1993), cert. denied, 513 U.S. 869 (1994)). Equitable estoppel is one such exception. Sunkist Soft Drinks, at 757; Blinco v. Green Tree Servicing LLC, 400 F.3d 1308, 1311-1312 (11th Cir. 2005); MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999); McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., Inc., 741 F.2d 342 (11th Cir. 1984). "[I]f a party relies on the terms of a written agreement in asserting the party's claims, that party is equitably estopped from then seeking to avoid an arbitration clause within the agreement." Becker, 491 F.3d at 1300. Thus, when the party's claims against a non-party to the agreement "makes reference to" or "presumes the existence of" the written agreement, the party's claims "arise[ ] out of and relate[ ] directly to the [written] agreement," and arbitration is appropriate. MS Dealer Serv., 177 F.3d at 947(citing Sunkist Soft Drinks, 10 F.3d at 757).

While Babcock Borsig is not a "party" to the Acquisition Agreement, the Agreement specifies its obligations and guarantees as BDCP's ultimate parent corporation. (Doc. #167, p. 2.) The

relevant portion of the Acquisition Agreement as it relates to Babcock Borsig provides:

> Babcock Borsig AG, for and on behalf of Seller [BDCP], hereby unconditionally and irrevocably guarantees to Purchaser [SPX Cooling] and its Affiliates the prompt payment (on demand and in lawful money of the United States) and performance of any and all obligations of Seller under this Agreement (and shall have all of the defenses of Seller under this Agreement, if any, other than defenses arising from insolvency or bankruptcy proceedings or similar laws or defenses pursuant to §771 of the German Civil Code (Einrede der Vorausklage) or similar defenses under the laws of other jurisdictions), subject to the terms and conditions set forth therein (as the Agreement may be amended or waived by the Seller and Purchaser from time to time)(the "**Guaranteed Obligations**"). This is a continuing guaranty by Babcock Borsig AG of the Guaranteed Obligations and shall remain in full force and effect against Babcock Borsig AG until payment and performance in full of the Guaranteed Obligations by the Seller. Babcock Borsig AG understands and agrees that this guaranty shall be construed as an irrevocable and continuing guaranty of payment and performance. Babcock Borsig AG hereby waives all suretyship defenses with respect to the enforcement of the above guarantee.

(Doc. #35-2, p. 82) (emphasis in original). Pursuant to the Acquisition Agreement, Babcock Borsig provided a continuing, irrevocable guarantee of BDCP's obligations to SPX Cooling.

SPX Cooling states in Count III of the Second Amended Third Party Complaint that "[t]his Count arises out of the afore referenced Acquisition Agreement wherein Third Party Defendant Babcock Borsig guaranteed [SPX Cooling] prompt payment and performance of any and all obligations that Third-Party Defendant BDCP has under the Acquisition Agreement." (Doc. #108, ¶ 20.) Although SPX Cooling argues that the indemnity guarantee does not

pertain to the Acquisition Agreement, the cause of action depends entirely upon Babcock Borsig's contractual duty to be the guarantor of BDCP's obligations. Additionally, this claim explicitly refers to the text of the Acquisition Agreement. SPX Cooling alleges that "BDCP and Babcock Borsig have breached their duties under the Acquisition Agreement." Id. at ¶ 29. Rather than the claim being external to the Agreement, as SPX Cooling argues, SPX Cooling is relying on, making reference to, and presuming the existence of the Acquisition Agreement in order to make a claim against Babcock Borsig. Thus, SPX Cooling is equitably estopped from seeking to avoid the arbitration clause within the Agreement.

Therefore, the Court holds that Count III of the Second Amended Third Party Complaint, as it relates to Babcock Borsig, is subject to arbitration. As previously stated (Doc. #147, pp. 11-12), the claim for contribution (Count IV) is distinct from any obligation under the Acquisition Agreement, and is not subject to arbitration. The contribution count is based upon a Florida statute, not the Acquisition Agreement. Therefore, the arbitration stay does not encompass the fourth count. Nonetheless, the arbitration proceedings will impact the contribution claim. See FLA. STAT. §768.31(2)(f)("When one tortfeasor is entitled to indemnity from another, the right of the indemnity obligee is for indemnity and not contribution, and the indemnity obligor is not entitled to contribution from the obligee for any portion of her or his indemnity obligation.") Therefore, in the interests of judicial

economy, the Court will stay the fourth count of the Second Amended Third Party Complaint pending completion of the arbitration proceedings.

Accordingly, it is now

**ORDERED:**

Third Party Defendant Babcock Borsig AG's Motion to Stay Proceedings and Compel Arbitration as to the Second Amended Third Party Complaint of SPX Cooling Technologies, Inc., or in the Alternative, Motion to Dismiss (Doc. #167) is **GRANTED IN PART AND DENIED IN PART**.  The motion is **granted** to the extent that Count III of the Second Amended Third Party Complaint is **stayed** pending arbitration pursuant to the Acquisition Agreement; Count IV is **stayed** during the pendency of the arbitration proceedings as to Count III.  The motion is otherwise **denied**.

**DONE AND ORDERED** at Fort Myers, Florida, this   28th   day of September, 2009.

JOHN E. STEELE
United States District Judge

Copies:
Counsel of record